UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for Integra Bank, N.A., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 3:11-cv-19-RLY-WGH |
| | ) | |
| FIDELITY AND DEPOSIT COMPANY OF MARYLAND, | ) ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION TO COMPEL**

Plaintiff, Federal Deposit Insurance Corporation, as receiver for Integra Bank, N.A. ("FDIC"), seeks to recover on a financial institution bond issued to Integra by Defendant, Fidelity and Deposit Company of Maryland ("F&D"). F&D moved to compel communications between Jeffrey Devine, Integra in-house counsel, and Integra officials. (Docket No. 142). For the reasons set forth below, F&D's motion is **GRANTED in part** and **DENIED in part**.

I.    **Factual Background**

Integra, purportedly relying on the advice of Integra loan officer Stuart Harrington, issued eight loans to Louis Pearlman and/or companies owned by Pearlman, totaling approximately $29 million. (Supplemental Complaint ¶ 39). Pearlman, in collaboration with Harrington, filed false financial reports with Integra in the loan application process, and in fact there was no valid collateral

1

for the loans.  (*Id.* ¶¶ 34, 126).  Pearlman defaulted on the loans, exposing Integra to losses of nearly $23 million.  (*Id.* ¶¶ 36, 41; Defendant's Ex. C at 1).

F&D issued a financial institution bond to Integra, in which it agreed to indemnify Integra from "[l]oss resulting directly from dishonest or fraudulent acts committed by an [Integra] employee acting alone or in collusion with others."  (*Id.* ¶ 17).  The bond also mandated that F&D indemnify Integra for "[l]oss resulting directly from [Integra] having . . . (1) acquired, sold or delivered, or given value, extended credit or assumed liability, on the faith of any original (a) certificated security which (i) bears a signature . . . which is a forgery."  (*Id.* ¶ 21).  The financial institutions bond covered the time period July 1, 2007, until June 30, 2010.  Integra filed a proof of loss form with F&D, in which Devine claimed he discovered the loss due to Harrington and Pearlman's fraud on June 29, 2010.  (Defendant's Ex. C at 1).  Integra sought to recover on the bond on the theory that Pearlman colluded with former Integra Vice President Stuart Harrington to ensure Integra would extend the fraudulent loans to Pearlman.  (Supplemental Complaint ¶¶ 26-27, 34).

To collect on the bond, Integra would have to show proof of dishonesty by Harrington, and that dishonesty was discovered within the bond coverage period.  (Defendant's Ex. B at 24).  F&D denied coverage, claiming Integra could not prove Pearlman colluded with Harrington while Harrington was employed with Integra.  (Defendant's Ex. A ¶¶ 4-13).  Integra filed suit to enforce the bond on February 11, 2011.  (Docket No. 1).  On July 29, 2011, the Office of the Comptroller of the Currency closed Integra and appointed FDIC as

Integra's receiver.  FDIC was substituted as Plaintiff and filed a supplemental
complaint.  (Supplemental Complaint ¶¶ 5-6).  During discovery, FDIC
produced an extensive privilege log, claiming attorney-client and work-product
privilege on the grounds that Devine was acting as Integra's in-house counsel
in those communications.  (Defendant's Ex. E; Plaintiff's Response at 4).

## II.    Legal Standard

Federal Rule of Civil Procedure 26 requires parties to engage in broad,
open discovery, as "[p]arties may obtain discovery regarding any nonprivileged
matter that is relevant to any party's claim or defense."  FED. R. CIV. P. 26(b)(1).
However, materials may be shielded from discovery by attorney-client privilege,
work-product privilege, or common interest doctrine.  The attorney-client
privilege "protects communications made in confidence by a client and client's
employees to an attorney, acting as an attorney, for the purpose of obtaining
legal advice. . . .  The privilege belongs to the client, although an attorney may
assert the privilege on the client's behalf."  *Sandra T.E. v. S. Berwyn Sch. Dist.
100*, 600 F.3d 612, 618 (7th Cir. 2010)(citations omitted).

For materials to be covered by attorney-client privilege, the court must
determine:  (1) whether legal advice was sought from an attorney in her
capacity as an attorney; and (2) whether any communications between the
client and her attorney or attorney's agent were germane to that purpose and
made confidentially.  *Id.* (citing *U.S. v. Evans*, 113 F.3d 1457, 1461 (7th Cir.
1997)).  The party invoking attorney-client privilege must make a *prima facie*
showing of these elements.  *Rockies Express Pipeline LLC v. 58.6 Acres*, 2009

3

WL 5219025, at *3 (S.D. Ind. Dec. 31, 2009).  Once the seeking party has established those elements, the burden shifts to the party seeking discovery to show that the communications are not protected due to confidentiality either being waived or nullified.  *Id.*; *see Bassett v. State*, 895 N.E.2d 1201, 1206 (Ind. 2008); *Corll v. Edward D. Jones & Co.*, 646 N.E.2d 721, 725 (Ind. Ct. App. 1995).

Work-product privilege protects "**(1)** documents and tangible things that are **(2)** prepared in anticipation of litigation or for trial **(3)** by or for another party or its representative." FED. R. CIV. P. 26(b)(3)(A)(emphasis and numbering added).  The purpose is to protect attorney's thought processes and mental processes and to avoid allowing a less diligent attorney to piggyback on the adverse attorney's trial preparation.  *Sandra T.E.*, 600 F.3d at 622.  Nonetheless, these materials may be discovered if they fall within Rule 26(b)(1)'s scope, the party has substantial need for the documents, and the party cannot otherwise obtain their substantial equivalents without undue hardship.  FED. R. CIV. P. 26(b)(3)(A)(i-ii).  If disclosure is mandated, any attorney mental impressions must be redacted from the materials before they are given to the adverse party.  *Id.* at 26(b)(3)(B).  Like with attorney-client privilege, the party seeking to shield work product from discovery bears the burden of proof.  *See, e.g., Mullins v. Dep't of Labor of Puerto Rico*, 269 F.R.D. 172, 175-76 (D. P.R. 2010).

The common interest doctrine is "an exception to the rule that no privilege attaches to communications between a client and an attorney in the

presence of a third person." *U.S. v. BDO Seidman LLP*, 492 F.3d 806, 815 (7th Cir. 2007).  The common interest doctrine applies "where the parties undertake a joint effort to a common legal interest, and the doctrine is limited strictly to those communications to further an ongoing enterprise." *Id.* at 816.  However, "communications need not be made in anticipation of litigation." *Id.*  As is discussed more fully in the court's companion Entry on Plaintiff's Motion for Protective Order (Docket No. 190), certain communications between Integra employees, the Trustee in bankruptcy, and fellow creditors committee members in the Pearlman/Trans Continental Airlines Bankruptcy are protected under the common interest doctrine.

## III.   Discussion

F&D seeks to compel production of Devine's communications with Integra on four grounds.  We categorize them as follows:  (A) that FDIC has not provided an appropriate privilege log, thereby failing to meet their burden of establishing privilege; (B) that Devine was acting in a business, not legal, capacity, for the communications sought, and that these communications are not "in his capacity as an attorney" and therefore are not protected by privilege; (C) that Integra and FDIC waived the privilege by placing Devine's knowledge at issue; and (D) that by disclosing some of their communications with Devine, Integra and FDIC waived privilege over the rest of the documents.

### A.   Was Devine acting in his capacity as an attorney in his role with Integra?

The court must clearly define Devine's employment with Integra to determine whether communications to and from Devine are privileged.  It is

undisputed that Devine was employed in a business, non-legal capacity by Integra, in addition to his role as in-house counsel.  Courts have consistently held that, when in-house counsel conducts both business and legal functions, only those communications made when the attorney is wearing his "legal advisor hat" are protected.  *Upjohn Co. v. United States*, 449 U.S. 383, 390, 394, 101 S. Ct. 677, 67 L. Ed. 2d 584 (1981); *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003).  In Indiana, privilege is applied narrowly, especially to communications with in-house counsel.  *See Welch v. Eli Lilly Co.*, 2009 WL 700199, at *12 (S.D. Ind. Mar. 16, 2009).  FDIC bears the burden of showing the communications sought by F&D were between Integra principals seeking legal advice from Devine, and that Devine conveyed legal advice acting in his capacity as an attorney, and thus his communications should be protected under the attorney-client privilege.  *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000).

Preliminarily, F&D accuses FDIC of asserting a "blanket privilege" covering all communications to and from Devine.  In doing so, F&D claims, FDIC is withholding communications made by Devine pertaining to business decisions, including communications about Pearlman's arrest and Integra's approval of the loans to Pearlman.  (Defendant's Brief at 11).  FDIC's current litigation counsel, Jacob Kahn, rejoins that FDIC and Integra have produced the business-related, unprivileged communications, and those sought to be withheld are those containing Devine's legal advice or communication between Devine or others and Integra's outside counsel.  (Affidavit of Jacob Kahn ¶¶ 9,

6

13).  FDIC argues that this production of documents undercuts F&D's argument that they have sought a blanket privilege over Devine's communications.  (Plaintiff's Response at 14).

F&D claims that Kahn's affidavit is insufficient, because Kahn has no personal knowledge of the documents and the privilege log did not differentiate between Devine's legal and non-legal communications.  F&D further argues that the exemplar documents all appear to be sent to or from Devine in his business capacity.  (Defendant's Reply at 15 (citing Defendant's Ex. E)).

The court agrees with F&D.  Examining FDIC's privilege log, the court notes several non-legal descriptors—e.g., "loan default rates," "calculations for default letters," and "default letters for TCA and Pearlman" (Defendant's Ex. E at 8, 11)—in addition to legal descriptors.  Moreover, many of the descriptions are simply too vague to allow F&D or the court to determine that these communications were made to or from Devine while he acted in his legal advisor role.  The court therefore cannot find that attorney-client privilege exists for most of the communications.[1]

FDIC's claim of work-product privilege also fails for most documents.  To qualify as work product, the communications must have been made in anticipation of litigation *against the party seeking production*—F&D.  Fᴇᴅ. R. Cɪᴠ. P. 26(b)(3)(A).  Since the bond coverage period did not start until July 1, 2007, no communications made before that date could reasonably have been

---

[1] Attorney-client privilege does, however, apply to communications between Devine, as an Integra executive, and Integra's outside counsel (*see, e.g.*, Defendant's Ex. E at 6 (communication with Lawrence Rifken)), provided that the outside counsel was functioning in a legal capacity.

made in anticipation of litigation against F&D.  Any communications made by
Devine after June 29, 2010, when Integra purportedly discovered the loss
under the bond (Defendant's Ex. C at 1), would clearly be in anticipation of
litigation and protected under the work-product doctrine.  However, it is
unclear on what date before June 29, 2010, that Integra began preparing its
Discovery of Loss and Notice of Loss.  The court therefore asks the parties to
submit briefing on the issue of what date it became reasonable to anticipate
litigation against F&D.

    For attorney-client privilege, only communications where Devine was
transmitting legal advice "as an attorney" are protected.  All communications in
which Devine was not wearing his "legal advisor hat" are not protected.

## B.    Did FDIC waive attorney-client privilege by placing Devine's knowledge at issue?

    F&D argues that the remaining communications should not be privileged
because Integra relied upon Devine's knowledge to establish the discovery of
Harrington's dishonesty during the bond coverage period—an essential element
of its claim against F&D.  Thus, FDIC attempting to withhold Devine's
communications in the time leading up to the discovery of loss is improper.
F&D claims that Indiana law does not allow a party to use an actor's knowledge
as a shield *and* as a sword, *see, e.g.*, *Brown v. Katz*, 868 N.E.2d 1159, 1166-67
(Ind. Ct. App. 2007)(emphasis added), and instead holds that waiver of
attorney-client privilege occurs when a party:  (1) affirmatively places
information at issue; (2) the information is relevant to the dispute; and (3)
upholding privilege would be unfair, since it would deny the other side vital

8

information.  *Pippenger v. Gruppe*, 883 F. Supp. 1201, 1204 (S.D. Ind. 1994)(citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).

FDIC advances two main counterarguments.  First, it argues that since neither Integra nor FDIC's complaints referenced Devine's knowledge in establishing that it discovered the loss during the bond coverage period, FDIC never put Devine's knowledge at issue.  (Plaintiff's Response at 5-6).  The proof of loss form—filed with F&D, but never with the court—is not a judicial admission.  Rather, FDIC claims, it was F&D that placed Devine's knowledge at issue by raising compliance with the discovery and notice provisions as affirmative defenses.  Therefore, F&D must prove why Devine's communication is not privileged.  *Cent. Nat'l Life Ins. Co. v. Fidelity & Dep. Co. of Md.*, 626 F.2d 537, 543 (7th Cir. 1980).

Second, FDIC argues that the relevance of privileged material is not a sufficient basis to find waiver.  FDIC notes that Indiana has not been hospitable to finding waiver of attorney-client privilege simply when a client's state of mind is at issue and the privileged communication is vital to the opposing party.  Rather, only when a party takes advantage of the communication should waiver be found.  *Harter v. Univ. of Indianapolis*, 5 F. Supp. 2d 657, 664 n.2 (S.D. Ind. 1998)(citations omitted).  FDIC argues that neither FDIC nor Integra relied on Devine's knowledge, since many other Integra officials had knowledge that Integra had not discovered the loss under the bonds until June 2010.  (Deposition of Michael Carroll ("Carroll Dep.") at 151, 154-55, 158-60).

9

The court finds that Integra and FDIC placed Devine's knowledge at issue.  Regardless of whether other employees had knowledge of when the loss was discovered, Devine not only signed the proof of loss form, he also signed a narrative explanation of loss, which detailed his factual investigation and legal opinion.  (Defendant's Ex. P at 19).  Michael Carroll, Chief Financial Officer for Integra, admitted that Devine was in charge of the "supplemental proofs of loss."  (Carroll Dep. at 200).  Moreover, FDIC has the burden of proof on discovery of loss, since discovery within the coverage period and notice to the insurer are elements of its claim.[2]  *See Miller v. Dilts*, 463 N.E.2d 257, 263 (Ind. 1984).  Therefore, attorney-client privilege would not cover those e-mails in which Devine was acting as Integra's in-house counsel.  *Harter*, 5 F. Supp. 2d at 664.

However, the court agrees with FDIC that putting Devine's knowledge at issue is insufficient to waive privilege on all communications.  As discussed above, some of his communications with other Integra employees prior to the notification of loss appear to be Devine's preparation in anticipation of litigation against F&D.  They therefore would qualify as work-product.  F&D has not demonstrated why the underlying communications provide essential information not otherwise detailed in Devine's narrative report, which has

---

[2] *Central National* was a diversity case applying Illinois law, and the Court did not explicitly address issues of discovery and loss during a bond period.  *Cent. Nat'l Life Ins. Co.*, 626 F.2d at 543.  This court therefore declines to extend the *Central National* holding to this case.

already been disclosed.  Therefore, F&D has not shown substantial need, and

its motion to compel those communications connected to Integra's Discovery

and Notice of Loss under the bond coverage must be denied.

### C.    Subject Matter Waiver

F&D argues that when FDIC produced selected communications it had

with Devine (Defendants' Exs. F-J) pertaining to Integra's discovery of loss

under Coverage A of the bond, FDIC waived privilege on those subject matters,

and all related communications must be produced.  (Defendant's Brief at 9

(citing *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005);

*Eli Lilly & Co. v. Zenith Goldline Pharma., Inc.*, 149 F. Supp. 2d 659, 661 (S.D.

Ind. 2001))).  FDIC rejoins that the selected communications were produced

before FDIC was appointed as a receiver.  The court granted a "claw-back"

protective order, by which the parties could produce documents to each other

and then reclaim any privileged material.  (Docket No. 92 ¶ 24).  Therefore, any

production of privileged material was inadvertent, and no waiver occurred.

The automatic subject-matter waiver was abolished by Congress before

the start of this litigation, *see Appleton Papers, Inc. v. EPA*, 702 F.3d 1018,

1026 (7th Cir. 2012), so the disclosure of privileged material does not

necessarily waive privilege for documents of the same subject matter.  Federal

Rule of Evidence 502 governs these waivers, and states that when otherwise

privileged material is disclosed in discovery, attorney-client or work-product

privilege is waived for undisclosed communications "*only* if:  (1) the waiver is

11

intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." FED. R. EVID. 502(a)(emphasis added).

Even assuming *arguendo* that the disclosed materials were privileged, F&D cannot meet the Rule 502 elements. The court agrees that since FDIC lacked awareness that Integra's counsel had produced the documents prior to this motion, and FDIC never cited or planned to use these documents in litigation, waiver was not intentional. (Kahn Aff. ¶ 6). F&D cites no case law supporting its proposition that FDIC's failure to object to the documents' introduction at Martin Zorn's deposition makes production intentional. Moreover, while F&D claims that the disclosed materials pertain to Devine's discovery of loss—an element in asserting coverage under the bond—none of the exemplar documents relate to Harrington's participation in Pearlman's fraud, the basis for FDIC's claim. Therefore, F&D cannot meet the "same subject matter" requirement, FED. R. EVID. 502(a)(2), and no subject-matter waiver has occurred. The court thus must assess on a document-by-document or category-by-category basis which communications are protected.

### D.    Adequacy of Privilege Log

If a party seeks to protect materials from discovery under either attorney-client or work-product privilege, that party must produce a privilege log with enough information for the opposing party and court to determine whether privilege should apply. FED. R. CIV. P. 26(b)(5)(A)(ii); *see Jones v. Hamilton Co.*

12

*Sheriff's Dep't*, 2003 WL 21383332, at *4 (S.D. Ind. 2003).  The log must generally contain:

> (1) the name and job title or capacity of the author(s)/originator(s);
> (2) names of person(s) receiving document or copy, and their affiliation with the producing party;
> (3) general description of the document by type;
> (4) the date and subject matter of the communication; and
> (5) on what grounds the party believes it to be privileged.

*Jones*, 2003 WL 21383332, at *4 (citations omitted).

The privilege log provided in this case can be divided into two parts.  One portion of the privilege log, consisting of pages 1-67 of Exhibit E, addresses on a document-by-document basis FDIC's claim of privilege.  A second part of the privilege log, found at pages 70-78 of Exhibit E, addresses certain electronic document protection in which the assertion of privilege is directed towards certain "groups" of communications.  FDIC indicates that to deal with the documents that are electronically produced other than by these categories would require an unduly burdensome task of listing individually some 12,000 documents.  (Kahn Aff. ¶¶ 9-10).

### 1.    The Individualized Privilege Log

At issue in this motion is whether the FDIC has provided a sufficient "general description of the document by type" to allow the court and the opposing party to determine whether attorney-client and/or work-product privilege can be found to exist.  The court is mindful of the difficulty in constructing such a description.  While not being critical of the effort put forth in this case, the court finds that, in the main, the FDIC's "description" is not

sufficient to assert the attorney-client privilege. The descriptions used by the FDIC in this case adequately describe "what" the document is, but do not educate the court as to "why" the document is privileged. For example, "Letter Regarding Integra Bank N.A. – Transcontinental Airlines Loan Review" (Defendant's Ex. E at 1); "Redacted email chain regarding information needed for closing" (*id.* at 4); "Redacted email chain regarding TCA" (*id.* at 5); "Redacted email regarding web search on Pearlman" (*id.* at 6); "Redacted email regarding Mandy Newland, Executive Assistant to Pearlman" (*id.* at 7); and many others, adequately describe what the document is, but do not allow the court or opposing party to determine why the attorney-client privilege might apply to that particular document. For the vast bulk of the documents for which attorney client privilege is claimed, the descriptions are not sufficient to establish "why" the documents are privileged. None of the descriptions say, for example, "the email contains the opinion of counsel on whether to file the Complaint." There are also a number of items which are "undated" and do not contain identifiers as to who produced the items at issue. (*See, e.g.*, *id.* at 54-56).

## IV.   Conclusion

Based upon the analysis above, and having reviewed the descriptions provided, the court concludes that only the following Bates Number documents, which were either sent to or from Devine, or on which he was copied, are adequately described to invoke the attorney-client privilege:

14

| | | | | |
|---|---|---|---|---|
| (1) | 003433-003440 | | (47) | 013270 |
| (2) | 003442 | | (48) | 013271-013272 |
| (3) | 003546-003547 | | (49) | 013309 |
| (4) | 006865 | | (50) | 013684 |
| (5) | 007072-007088 | | (51) | 013709 |
| (6) | 007092 | | (52) | 013710 |
| (7) | 007131-007134 | | (53) | 013842 |
| (8) | 007153-007155 | | (54) | 014209–014214 |
| (9) | 007162-007175 | | (55) | 014346 |
| (10) | 007734-007741 | | (56) | 014347 |
| (11) | 007744 | | (57) | 017121 |
| (12) | 007745 | | (58) | 017304–017305 |
| (13) | 007989-007990; | | (59) | 017348-017349 |
| (14) | 008042 | | (60) | 017350-017351 |
| (15) | 008060 | | (61) | 017352-017353 |
| (16) | 008079-008080 | | (62) | 017354-017355 |
| (17) | 008088-008090 | | (63) | 017356-017357 |
| (18) | 008091-008092 | | (64) | 017358 |
| (19) | 008124-008126 | | (65) | 017359 |
| (20) | 008127-008128 | | (66) | 017360 |
| (21) | 008237-008239 | | (67) | 017363-017364 |
| (22) | 008524-008532 | | (68) | 017365 |
| (23) | 008533-008540 | | (69) | 017366-017367 |
| (24) | 008565 | | (70) | 017368 |
| (25) | 008639 | | (71) | 017369 |
| (26) | 008642 | | (72) | 017379-017380 |
| (27) | 010493 | | (73) | 027888 |
| (28) | 011709 | | (74) | 028639-029641 |
| (29) | 011817 | | (75) | 028709-028715 |
| (30) | 012021-012022 | | (76) | 028849 |
| (31) | 012151 | | (77) | 028912 |
| (32) | 012269-012285 | | (78) | 028999 |
| (33) | 012286-012298 | | (79) | 030814 |
| (34) | 012299-012304 | | (80) | 040785-040794 |
| (35) | 012305 | | (81) | 042765-042766 |
| (36) | 012373-012381 | | (82) | 043065-043066 |
| (37) | 012427 | | (83) | 043384-043385 |
| (38) | 012467 | | (84) | 043447 |
| (39) | 012588 | | (85) | 044960 |
| (40) | 012596-012604 | | (86) | 044963-044965 |
| (41) | 012605-012607 | | (87) | 044986 |
| (42) | 012608 | | (88) | 045162 |
| (43) | 012626 | | (89) | 045163-045174 |
| (44) | 012755-012759 | | | |
| (45) | 012881 | | | |
| (46) | 013260-013261 | | | |

None of the other Bates Number entries in the privilege log is sufficiently described to allow the court to conclude that the documents are protected by the attorney-client privilege.  The court also concludes that none of the other Bates Number entries is adequately described to invoke the work-product privilege[3] or common interest doctrine.

### 2.    Categorical Privilege Log

The court is mindful that when privilege is asserted, privilege logs must be itemized so that the privilege claim may be evaluated on a document-by-document basis.  *See Howard v. Dravet*, 813 N.E.2d 1217, 1222 (Ind. Ct. App. 2004).  Nonetheless, it agrees with FDIC that individually logging and listing the 12,000 electronic documents is unduly burdensome and unlikely to yield additional information as to whether the documents are protected.  (Kahn Aff. ¶ 9).  Since FDIC has the burden to establish privilege, the court construes any ambiguities and draws all inferences in favor of disclosure.

---

[3] For documents allegedly protected as work product, those documents dated before the bond coverage period started on July 1, 2007, are not protected because no litigation against F&D can be anticipated before the bond came into existence.  Those documents dated after the discovery of loss, June 29, 2010, are protected.  As to documents dated between July 1, 2007, and June 29, 2010, if the parties are unable to agree when Integra reasonably began anticipating litigation against F&D, the parties may submit further briefing for the court to determine what date the work-product privilege began.

16

Having reviewed the categorical descriptions, the court finds only these categories to be protected by attorney-client privilege:  7-13 and 15-18.[4]  The court finds these categories to be protected by the common interest doctrine: 14, 19-24.  The court finds these categories contain documents protected by the work-product doctrine:  6, 29, 31-32, and 36.  However, as stated *supra*, only those documents prepared in anticipation of litigation against F&D are protected as work product.

## V.    Conclusion

For the foregoing reasons, F&D's Motion to Compel (Docket No. 142) is **GRANTED in part** and **DENIED in part**.  FDIC may supplement its privilege log to enable the court to determine in which documents Devine was acting in a legal capacity.  Parties are ordered to submit briefings within 30 days on whether additional communications prior to June 29, 2010, should be protected.

**IT IS SO ORDERED** the 3rd day of June, 2013.

_____
William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

Distribution via email to all ECF-registered counsel of record.

---

[4] The court notes that these categories protect any communications between Devine and other Integra employees and Integra's outside counsel—that is, where Devine was the client, not the attorney.

17