UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Integra Bank, N.A., <br><br> Plaintiffs, <br><br> vs. <br><br> FIDELITY AND DEPOSIT COMPANY OF MARYLAND, <br><br> Defendant. | 3:11-cv-19-RLY-WGH |

**ENTRY ON ANTICIPATION OF LITIGATION**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, pursuant to the Magistrate Judge's June 3, 2013 Order granting in part and denying in part the Motion to Compel by Defendant, Fidelity and Deposit Company of Maryland ("F&D"). (Docket No. 189). To properly determine which communications made by Integra Bank, N.A. ("Integra") Vice President and in-house counsel Jeffrey Devine were privileged under the work-product doctrine, F&D and the Federal Deposit Insurance Company ("FDIC"), as Integra's receiver, were ordered to brief the court on the date by which Integra reasonably anticipated litigation against F&D. (*Id.* at 16 n.3).

The Magistrate Judge, being duly advised, determines that **February 18, 2010,** was the day at which litigation was anticipated. The court therefore **GRANTS** F&D's Motion to Compel for all attorney communications made by

1

Devine prior to February 18, 2010, and **DENIES** the Motion for all communications occurring on or after that date.

## I.     Factual Background

Integra, purportedly relying on the advice of Integra loan officer Stuart Harrington, issued eight loans to Louis Pearlman and/or companies owned by Pearlman.  (Supplemental Complaint ¶ 39).  Pearlman, allegedly in collaboration with Harrington, presented Integra with forged stock certificates and filed false financial reports with Integra in the loan application process.  (*Id.* ¶¶ 34, 126).  Pearlman defaulted on the loans, exposing Integra to losses of approximately $20 million.  (*Id.* ¶¶ 36, 41).

In 2007, F&D issued a financial institution bond to Integra, in which it agreed to indemnify Integra from "[l]oss resulting directly from dishonest or fraudulent acts committed by an [Integra] employee acting alone or in collusion with others."  (*Id.* ¶ 17) ("Coverage A").  The bond also mandated that F&D indemnify Integra for "[l]oss resulting directly from [Integra] having . . . (1) acquired, sold or delivered, or given value, extended credit or assumed liability, on the faith of any original (a) certificated security which (i) bears a signature . . . which is a forgery."  (*Id.* ¶ 21) ("Coverage E").  The financial institutions bond covered the time period July 1, 2007, until June 30, 2010.

On April 30, 2008, Integra sent F&D a notice of loss letter under Coverage E, claiming Integra discovered on or before March 18, 2008, that Pearlman's signature on one of the stock certificates was a forgery.  (Plaintiff's Ex. 1 at 6).  Integra also stated that "[s]hould evidence surface that Harrington,

while employed by Integra, engaged in behaviors described within [Coverage A] . . . then Integra may be able to recover damages under [Coverage A]." (*Id.* at 9). On May 14, 2008, F&D informed Integra that while it acknowledged Integra had raised a potential Coverage A claim, it would evaluate the claim solely under Coverage E absent further supporting information for a Coverage A claim. (Plaintiff's Ex. 2 at 2). On August 1, 2008, Integra submitted its proof of loss under Coverage E. (Plaintiff's Ex. 3). F&D denied Integra's Coverage E claim on November 20, 2008. (Plaintiff's Ex. 4).

On February 18, 2010, Integra and F&D agreed to a tolling agreement, in which the parties agreed to refrain from any dispute resolution until February 18, 2011, or until 30 days after either Integra or F&D notified the other party in writing that it intended to initiate dispute resolution proceedings. (Plaintiff's Ex. 5 ¶¶ 1-2). Integra notified F&D of its intent to file suit on December 24, 2010 (Plaintiff's Ex. 6), and filed its complaint on February 11, 2011. (Docket No. 1). On July 29, 2011, the Office of the Comptroller of the Currency closed Integra and appointed FDIC as Integra's receiver. FDIC was substituted as Plaintiff and filed a supplemental complaint. (Supplemental Complaint ¶¶ 5-6). That same day, FDIC produced a privilege log. (Plaintiff's Ex. 7).

On June 3, 2013, this court issued its Order granting in part and denying in part F&D's motion to compel production of communications involving Devine. FDIC claimed these communications were protected under attorney-client privilege and the work-product doctrine. The court held that the only communications protected by attorney-client privilege were those in

which:  (1) Devine was transmitting legal advice to other Integra employees; or (2) outside counsel was communicating legal advice to Devine in his business capacity (i.e., when Devine was acting as a *client*, rather than as an attorney). (Docket No. 189 at 7 n.1, 8).  The court further held that the work-product doctrine only protected Devine's communications of legal advice made after Integra reasonably anticipated litigation against F&D.  (*Id.* at 7-8).

On June 27, 2013, FDIC sent F&D a letter, notifying F&D that Integra had anticipated litigation no later than March 18, 2008, when it discovered its Coverage E loss.  (Plaintiff's Ex. 9 at 1-2).  However, F&D claimed FDIC could not have anticipated litigation until it terminated the tolling agreement on December 24, 2010.  (Plaintiff's Ex. 8 at 1).

## II.    Law

Work-product privilege protects "**(1)** documents and tangible things that are **(2)** prepared in anticipation of litigation or for trial **(3)** by or for another party or its representative."  FED. R. CIV. P. 26(b)(3)(A) (emphasis added).  The purpose is to protect attorney's thought processes and mental processes and to avoid allowing a less diligent attorney to piggyback on the adverse attorney's trial preparation.  *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010).  The party seeking to shield work product from discovery bears the burden of proof.  *See, e.g., Mullins v. Dep't of Labor of Puerto Rico*, 269 F.R.D. 172, 175-76 (D. P.R. 2010).  Once the asserting party satisfies its burden of establishing that disputed material was prepared in anticipation of litigation, the burden shifts to the party requesting discovery to show (1) a

4

substantial need of the materials to prepare his case and (2) the inability, without undue hardship, to obtain the substantial equivalent of the materials by other means. FED. R. CIV. P. 26(b)(3)(ii) (numbering added); *Suson v. Zenith Radio Corp.,* 763 F.2d 304, 308 n.2 (7th Cir. 1985).

For a party to reasonably anticipate litigation, it must demonstrate that: a claim, likely to lead to litigation, had arisen at the time those documents were prepared; litigation was probable and imminent; or there existed impending litigation when the materials were made. *Harper v. Auto-Owners Ins. Co.,* 138 F.R.D. 655, 659-60 (S.D. Ind. 1991) (citations and internal quotations omitted). "The fact that litigation did in fact occur, that a party has consulted or retained an attorney, [or] that a party has undertaken an investigation or engaged in negotiations over the claim is insufficient to establish a reasonable anticipation of litigation under [Rule 26(b)(3)]." *Id.* at 660 (citations and internal quotations omitted).

### III. Discussion

The court acknowledges that its previous order stated that any communications made by Devine after Integra submitted notice of its Coverage A loss on June 29, 2010, were made in anticipation of litigation. (Docket No. 189 at 7). However, the issue of adverseness in the context of a first-party indemnity claim was not before the court. Upon briefing by the parties and for the reasons set forth below, the court finds that merely submitting notice or proof of loss is not sufficient to show that Integra reasonably anticipated litigation.

The nature of Integra's insurance claim—first-party indemnity, rather than a third-party liability—presents the court with an unusual circumstance. As F&D correctly points out, the insurer and insured's interests are aligned until and unless the insurer denies the claim. *See Tayler v. Travelers Ins. Co.*, 183 F.R.D. 67, 70-71 (N.D.N.Y. 1998). Without an adversarial relationship, litigation cannot be reasonably anticipated merely because the insured filed a coverage claim. *Illiana Surgery and Medical Center LLC v. Hartford Fire Ins. Co.*, 2012 WL 776694, at *7 (N.D. Ind. Mar. 7, 2012). FDIC points out that Integra retained outside counsel on March 18, 2008, to help prepare its Discovery of Loss and Notice of Loss under Coverage E (Plaintiff's Brief 8) and that McGuire Woods was responsible for its April 30, 2008 letter notifying F&D of its loss. (Plaintiff's Ex. 7 at 65). However, merely retaining counsel is not sufficient to show reasonable anticipation of litigation when the interests of the insurer and insured are aligned. *See Harper*, 138 F.R.D. at 660. Rather, it is almost always when the coverage is denied that a party reasonably anticipates litigation and thus can avail itself of work-product protection. *Id.* at 663; *Illiana*, 2012 WL 776694, at *5. Documents created before then are considered to be in the ordinary course of business and not work-product. *Illiana*, 2012 WL 776694, at *5 (quoting *Caremark, Inc. v. Affil. Comp. Servs., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000)).

FDIC directs the court to *Royal Surplus Lines Ins. Co. v. Sofamor Danek Grp., Inc.*, where the court found that the insurer issuing a reservation of rights letter was sufficient to trigger a reasonable anticipation of litigation. The


documents were therefore brought under work-product protection.  190 F.R.D. 463, 473 (W.D. Tenn. 1999).  However, the facts in that case are sufficiently different that the court does not find its holding applicable.  In *Royal Surplus*, the insurer claimed it anticipated litigation before the reservation of rights letter was issued by objecting to claims almost immediately after issuance.  *Id*.  The court held that only by taking the clear coverage position espoused in the reservation of rights letter did the insurer demonstrate that it reasonably anticipated litigation.  *Id*. at 473-74 (citing 8 Wright, Miller, & Marcus, Federal Practice and Procedure:  Civil 2d § 2024).  This case presents the reverse issue:  F&D was asking for more information in making its coverage decision and reminding Integra of its obligation to file its proof of loss within six months of the loss discovery.  (Plaintiff's Ex. 2 at 2-3).  While F&D did reserve its rights, the letter gives no indication that F&D intended to deny coverage.  Integra therefore could not have reasonably anticipated litigation.

F&D's argument that Integra could not have anticipated litigation until it terminated the tolling agreement is also unfounded.  F&D notes that FDIC has the burden of demonstrating evidence that Integra reasonably anticipated litigation.  *Pippenger v. Gruppe*, 883 F. Supp. 1201, 1211 (S.D. Ind. 1994). F&D claims FDIC produced no evidence showing Integra's anticipated litigation prior to notifying F&D in December 2010 of its intention to terminate the tolling agreement.  (Defendant's Brief 8 (citing Defendant's Ex. 6)).  The court disagrees and considers the existence of a tolling agreement prima facie evidence that the parties considered litigation to be much more than a "remote

prospect" or "inchoate possibility," *Harper*, 138 F.R.D. at 659-60 (internal quotations omitted), on February 18, 2010.

Having determined that litigation could not have been reasonably anticipated before November 20, 2008, and was anticipated on February 18, 2010, the court is left to determine when in that 15-month period litigation was anticipated by Integra. As the party seeking protection, FDIC must demonstrate, through affidavits or other record evidence, that it reasonably anticipated litigation some time before February 18, 2010. *Harper*, 138 F.R.D. at 664-65. FDIC is correct that Integra's privilege log may provide "a *prima facie* basis for invoking the privileges cited." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 2001 WL 699889, at *1 (S.D. Ind. Apr. 26, 2001) (emphasis in original). However, the privilege log contains no descriptions of communications dated after November 20, 2008, for which work-product protection is sought, which specifically describe adversary proceedings against F&D. While Integra's categorical privilege log does contain several categories concerning legal advice for "anticipated litigation against F&D" (Docket No. 142 Ex. E at 71-72, 74, 77-78), there is no indication as to when these communications took place. FDIC has not produced affidavits or designated any further evidence that shows when Integra began to reasonably anticipate litigation. Absent such a showing, the burden does not shift to F&D to demonstrate a reasonable, good faith belief that *in camera* inspection would reveal unprivileged materials. *See N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d

492, 502 (4th Cir. 2011) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992)).[1]

## IV. Conclusion

For the foregoing reasons, the court concludes that **February 18, 2010,** was the day Integra began reasonably anticipating litigation. The court therefore **GRANTS** F&D's Motion to Compel (Docket No. 142) for all attorney communications made by Devine prior to February 18, 2010, and **DENIES** the Motion for all communications occurring on or after that date.

**SO ORDERED** the 2nd day of August, 2013.

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Served electronically on all ECF-registered counsel of record.**

---

[1] FDIC argues that F&D, by not appealing the portion of the Order protecting communications made on or after June 29, 2010, has waived its arguments for discovering those communications. Since the court holds that the protected period precedes the June 29, 2010 date, it need not address FDIC's argument.