UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| INTEGRA BANK CORPORATION, <br> INTEGRA BANK, N.A., <br> FEDERAL DEPOSIT INSURANCE <br> CORPORATION as Receiver for Integra <br> Bank, N.A., <br> <br> Plaintiffs, <br> <br> vs. <br> <br> FIDELITY AND DEPOSIT COMPANY <br> OF MARYLAND, <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) 3:11-cv-00019-RLY-WGH <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**ENTRY ON FIDELITY AND DEPOSIT COMPANY OF MARYLAND'S OBJECTION TO THE SEPTEMBER 17, 2013 RULING**

Plaintiff, Federal Deposit Insurance Company, as Receiver for Integra Bank, N.A. ("FDIC"), brought suit against Defendant, Fidelity and Deposit Company of Maryland ("F&D"), to recover on a financial institution bond issued to Integra. In an Order dated September 17, 2013, the Magistrate Judge denied F&D's Motion for Relief from Protective Order, to Strike Plaintiff's Attempt to Clawback Documents and Compel Production of Non-Privileged Communications. (Docket # 251 (the "Order")). F&D timely filed an Objection to the Order. For the reasons set forth below, F&D's Objection is **OVERRULED in part and SUSTAINED in part**.

**I.     Background**

Integra entered into a series of loans with Louis Pearlman and his related businesses secured by collateral which later turned out to be non-existent.  After the loans went into default, Integra sought recovery under a financial institution bond from F&D which covered losses arising from employee dishonesty between July 1, 2007 to July 1, 2010.  Integra claims Pearlman obtained the loans by submitting false financial documents, and that he colluded with Integra's Executive Vice President of Commercial Lending, Stuart Harrington, to obtain these loans.  F&D refused to pay Integra for the losses, claiming that Integra knew of Harrington's fraud before the inception of the bond and did not disclose that information in the insurance application submitted to F&D.  Integra filed the present action on February 11, 2011, for breach of the financial institution bond.

In an effort to prove when Integra discovered the loss at issue, F&D served a request for production of documents on May 12, 2011, to Integra's counsel, Greenberg Traurig LLP.  (FDIC's Ex. B).  On July 29, 2011, Greenberg Traurig served F&D with over 50,000 pages of documents from paper files Integra had maintained, and enclosed a 69-page privilege log.  (Declaration of Jacob Kahn ("Kahn Dec."), Ex. 2).  On that same day, Integra bank was closed, and the FDIC was appointed as its receiver.  (*See* Docket # 46).  Following that appointment, the FDIC was substituted as the plaintiff in this action, and its counsel appeared in place of Integra's counsel, Greenberg Traurig.  (*See* Docket ## 81-83, 88).  Consequently, Greenberg Traurig never completed its review of Integra's electronic files subject to F&D's request for production.

The case was stayed until January 19, 2012. (Docket # 87). As a result, it was not until February 23, 2012, that the court entered a Stipulated Protective Order, which provides, in relevant part:

> The inadvertent production of any document or information protected or claimed to be protected by Privilege shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim or Privilege the producing party would otherwise be entitled to assert. A party shall have forty-five (45) days after one of its counsel in this case becomes actually aware that a privileged document has been inadvertently produced in which to request its return; otherwise, any claim of Privilege for the document shall be deemed presumptively waived. . . . If a party timely requests the return of privileged material, any party to which such material was produced shall, within five (5) business days after the request, return the material and provide confirmation that all copies of the material have been destroyed . . . .

(FDIC's Ex. A ¶ 24).

The discovery in this case has been complicated due in part to the subpoena F&D served on Greenberg Traurig for many of the same documents it had already sought through its document requests to Integra. (FDIC's Ex. D). Following correspondence between the two regarding the production of documents, Greenberg Traurig agreed to provide the FDIC with any potentially privileged documents for its further review. (FDIC's Ex. C, Ex. 4). Between April and October 2012, Greenberg Traurig produced approximately 9,000 pages of purportedly non-privileged documents directly to F&D, and turned over approximately 300,000 pages of non-privileged and privileged files to the FDIC for its review. (Docket # 147-2, ¶¶ 7-9).

On November 15, 2012, the FDIC completed its production of documents relating to F&D's May 12, 2011, request for production. It also provided F&D with a privilege

3

log by categories on December 7, 2012, for more than 12,000 privileged Integra documents. (FDIC's Ex. C, Ex. 8). The FDIC later learned, through an April 23, 2013, filing by F&D, that Greenberg Traurig produced to F&D an email it claims is subject to the common interest privilege. (Docket # 162-2 at 3). The FDIC subsequently discovered more emails were improperly produced and asked for the emails back pursuant to paragraph 24 of the parties' Stipulated Protective Order. (FDIC's Ex. E). F&D refused, and filed the subject Motion for Relief from Protective Order, to Strike Plaintiff's Attempt to Clawback Documents and Compel Production of Non-Privileged Communications.

At issue is that portion of the Magistrate Judge's Order denying F&D's motion to strike the FDIC's attempt to clawback, pursuant to paragraph 24 of the Stipulated Protective Order, two emails sent from Soneet Kapila,[1] the Trustee in the Pearlman bankruptcy, to Lawrence Rifkin, Integra's counsel, in his role as chairperson of the Pearlman Creditors' Committee, dated December 19, 2007. (*See* Docket # 196-2, filed *ex parte* for *in camera* inspection). Copied on these emails are: the Trustee's official counsel, the Trustee's special litigation counsel, the Trustee's forensic accountant, and the official counsel for the Creditor's Committee. Attached to the two-sentence emails is a schedule of payments from Pearlman to Harrington that Kapila had found to date, reflecting payments made to Harrington as far back as February 2005.

---

[1] These were actually sent from Mary McMickel, on behalf of Kapila.

## II. Discussion

In the September 17, 2013, Order, the Magistrate Judge denied F&D's motion, and held that: (1) the FDIC properly objected to the emails at issue; (2) the FDIC did not waive its privilege claims; and (3) the emails between the Trustee (Kapila), Rifkin, and the Pearlman Creditors' Committee are subject to the common interest privilege, as they "contain more than factual information." Pursuant to Rule 72(a), F&D objects, claiming the Magistrate Judge's Order was clearly erroneous and/or contrary to law. A finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) (quotation marks and citation omitted). With this standard in mind, the court now turns to F&D's objections.

### A. Objections to Privileged Information/Waiver

In finding that the FDIC properly objected to the emails at issue, the Magistrate Judge relied on the FDIC's privilege log submitted to the court in response to F&D's Request for Production of Documents, dated December 7, 2012. (FDIC's Ex. C, Ex. 9). Category 22 of the privilege log reads:

> Communications between and among attorneys and other representatives of (1) the members of the Committee of Unsecured Creditors of TCA [Trans Continental Airlines, Inc.] and (2) the Chapter 11 Trustee for Pearlman and TCA, related to the common legal interests in (1) investigating and analyzing the conduct, assets, and liabilities of TCA and Pearlman; and (b) maximizing the assets of TCA and Pearlman.

Under the heading "Nature of Privilege or Other Protection," it reads "Attorney-Client Privilege, Work Product, Common Interest." (*Id*.).

F&D argues the Magistrate Judge erred in finding that the FDIC properly objected to the emails on grounds of privilege.  The Magistrate Judge's finding that the emails are covered under Category 22 of the privilege log and that the assertion of privilege in the log served as an objection to F&D's request for the production of documents (here, the emails), does not leave the court with a definite and firm conviction that a mistake has been made.  As observed by the Magistrate Judge, Category 22 specifically addresses the emails at issue.  In addition, after the FDIC became the plaintiff in this action, the FDIC instructed Greenberg Traurig to produce, in response to the subpoena from F&D, any privileged information to the FDIC for its review.  The FDIC would not have asked Greenberg Traurig to undertake that measure had it taken a lackadaisical view toward the production of documents to F&D.  In short, the production of the subject emails appears to have been inadvertent and, pursuant to the parties' Stipulated Protective Order, the FDIC timely asserted a claw-back request.  F&D's objection is therefore **OVERRULED**.

  **B.**  **Waiver**

Citing to pages 10 and 11 of the FDIC's Response in Opposition to F&D's Motion for Relief from Protective Order, to Strike Plaintiff's Attempt to Clawback Documents and Compel Production of Non-Privileged Communications, the Magistrate Judge further found the FDIC did not waive its right to assert privilege.  Those pages of the FDIC's Response list the instances in which the FDIC reserved its right to object to the production of discovery on any ground, including privilege; instances in which the FDIC instructed Greenberg Traurig not to produce any privileged material to F&D; and the December 7, 2012 privilege log.  (*See also* FDIC's Response at 11-12).  In addition, the

Magistrate Judge relied on paragraph 24 of the parties' Stipulated Protective Order (the clawback provision), which provides that "[t]he procedure described in this paragraph is intended to allow for return of documents without waiver irrespective of the care taken by the disclosing party." On those grounds, the Magistrate Judge's finding that the FDIC did not waive its right to assert privilege was not clearly erroneous. F&D's objection on that ground is therefore **OVERRULED**.

### C. Common Interest Privilege

Lastly, citing pages 19 and 20 of the FDIC's Response, the Magistrate Judge found the emails at issue are subject to the common interest privilege, rejecting F&D's argument that the emails contain merely factual information. *See* Order at 6 ("For the reasons specified at pages 19-20 of FDIC's response at Docket No. 195, the Magistrate Judge concludes that the groups of emails contain more than factual information."). F&D raises the same argument here. Because it is not abundantly clear whether the Magistrate Judge held the emails were protected by the attorney client privilege or the work product doctrine, as extended by the common interest privilege, the court will discuss both.

#### 1. Attorney-Client Privilege

The common interest doctrine, also known as the joint defense privilege, "is an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person." *Evansville Greenway & Remediation Trust v. Southern Ind. Gas & Elec. Co., Inc.*, 2010 WL 779494, at *2 (S.D. Ind. 2010) (citing *United States v. BDO Siedman LLP*, 492 F.3d 806, 815 (7th Cir. 2007)). The doctrine is

an "extension" of the attorney-client privilege, and applies when a non-party sharing the client's interest is a party to a confidential communication between an attorney and client. *See In re Mortgage & Realty Trust*, 212 B.R. 649, 652-53 (C.D. Cal. 1997); *see also In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 417 (7th Cir. 2006).

Relying on *Mortgage & Realty Trust*, the FDIC argues the emails between the Trustee for Pearlman's bankruptcy estate to Rifkin, Integra's counsel and chairperson for the Creditors' Committee; and the Trustee's official counsel (Akerman Senterfitt LLP), the Trustee's special litigation counsel (Genovese Joblove & Battista P.A.), the Trustee's forensic accountant (J.H. Cohn LLP), and the official counsel for the Creditor's Committee (Mr. Feinstien), are subject to the common interest doctrine. In that case, the court held that a three-way conversation between the debtor's Executive Vice President, the debtor's bankruptcy counsel, and counsel for the committee of creditors, was subject to the common interest doctrine. *Id.* at 651. The court reasoned that the debtor in possession and the creditors' committee share a duty to maximize the debtor's bankruptcy estate, and that the communication between the debtor, his counsel, and counsel for the creditors' committee was protected by the common interest extension of the attorney-client privilege. *Id.* at 653-54.

As the party asserting the privilege, the FDIC bears the burden of proving the elements of the common interest doctrine. *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003). Because the common interest doctrine is dependent upon the existence of the attorney-client privilege, the court must first determine whether the attorney-client privilege exists in this instance. Essential elements of the attorney-client

privilege include the existence of an attorney-client relationship and a communication by the client made in confidence to his or her attorney for the purpose of obtaining legal advice. *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) (explaining attorney-client privilege).

Although the parties to the email – lawyers for both the Trustee and the Creditors' Committee, and an accountant – shared a common interest in maximizing Pearlman's bankruptcy estate, the common interest doctrine does not apply for two reasons. First, unlike the facts set forth in *Mortgage & Realty Trust*, the email communications at issue did not involve a communication by a client. Second, the email communications do not contain legal advice**.** *See Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (attorney-client privilege protects attorney-client communications and not to facts). Thus, the attorney-client privilege, as extended by the common interest doctrine, does not apply to this case.

### 2. Work Product Doctrine

The common interest privilege also applies to attorney work product. *See, e.g., Costello v. Poisella*, 291 F.R.D. 224, 231 (N.D. Ill. 2013) (noting the common interest doctrine also applies to attorney work product). The work product doctrine, announced in *Hickman v. Taylor*, 329 U.S. 495 (1947), protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial or for another party or its representative." FED. R. CIV. P. 26(b)(3)(A).

There are two types of work product: opinion work product and fact work product. *Id*. Fact work product is discoverable if it "is otherwise discoverable under Rule

26(b)(1)"; and "the party shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Opinion work product, which is comprised of an attorney's "mental impressions, conclusions, opinions, or legal theories," is not. FED. R. CIV. P. 26(b)(3)(A) & (B).

The emails at issue are covered under the work product doctrine as extended by the common interest doctrine. As noted above, the emails were sent by the Trustee to Rifkin, and they communicated confidential information the Trustee had discovered concerning alleged payments from Pearlman to Harrington. The parties shared a common legal interest in maximizing Pearlman's bankruptcy estate through, *inter alia*, the filing of a possible adversary claim based on those payments. The Trustee ultimately did file such a proceeding seven months later. (*See* FDIC's Ex. F).

The next issue is whether the emails contain purely factual information subject to disclosure. The court agrees with the Magistrate Judge that the email with the attachment designated as GT0002233 contains more than factual information, because the attached schedule of payments contains notes such as "person of interest" and "further investigation required." (*See* Docket # 196-2). As such, that email is subject to the claw-back provision of the parties' Stipulated Protective Order. The court finds, however, that the second, follow-up email designated as GT0002238 does contain purely factual information. The email directs the reader to the attached schedule of payments, which contains columns titled Bank ID #, check clearing date, check number, payee, memo, and endorsement. (*Id*.). There is nothing in the schedule of payments reflecting the

10

Trustee's, or any other legal representatives', "mental impressions, conclusions, opinions, or legal theories." The court therefore finds the Magistrate Judge erred, and that the email and attachment designated as GT0002238 is discoverable *if* F&D satisfies its burden of establishing the conditions set forth in Rule 26(b)(3)(A)(i) & (ii) – i.e., a substantial need for the information and that it cannot obtain its substantial equivalent without undue hardship.

### III.  Conclusion

F&D's Objection (Docket # 259) is **OVERRULED** in part, and **SUSTAINED** in part. Specifically, F&D's Objection regarding the Magistrate Judge's findings that the FDIC properly objected to the emails at issue and the FDIC did not waive its privilege claims is **OVERRULED**. In addition, the court finds the two emails at issue are subject to the work product doctrine, as extended by the common interest doctrine. F&D's Objection is **OVERRULED** regarding the Trustee's email to Rifkin and other members of the Pearlman Creditors' Committee that has the attachment designated as GT0002233, because that email contains subject matter that falls within the Trustee's mental impressions under Rule 26(b)(3)(A). F&D's Objection is **SUSTAINED** regarding the Trustee's email to Rifkin and other members of the Pearlman Creditors' Committee that has the attachment designated as GT0002238, because that email and its attachment contain purely factual information under Rule 26(b)(3)(B). The court has no comment on whether that email is subject to the clawback provision of the parties' Stipulated

Protective Order.  That is a matter that must be decided by the Magistrate Judge.


**SO ORDERED** this 10th day of January 2014.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.